ERIE RAILROAD COMPANY *v.* BOARD OF PUBLIC UTILITY COMMISSIONERS ET AL.

SAME *v.* SAME.

PASSAIC WATER COMPANY *v.* SAME.

WESTERN UNION TELEGRAPH COMPANY *v.* SAME.

D. FULLERTON & COMPANY *v.* SAME.

MEYER ET AL., PARTNERS DOING BUSINESS AS MEYER & DeVOGEL, *v.* SAME.

MORRIS & COMPANY *v.* SAME.

PUBLIC SERVICE RAILWAY COMPANY *v.* SAME.

ERROR TO THE COURT OF ERRORS AND APPEALS OF THE STATE OF NEW JERSEY.

Nos. 33–40. Argued November 16, 17, 1920.—Decided January 3, 1921.

1. A State may require a railroad company to do away with grade crossings of public streets, whether laid out before or after the construction of the railroad, and may place upon the company the expense of executing the State's plan to accomplish this by running the streets over or beneath the tracks. P. 409.
2. Of the two conflicting interests in such cases—that of the public using the streets and that of the railroad and the public using it— the former is paramount; and the State may constitutionally insist that the streets be kept free of danger whatever the cost to the parties introducing it. P. 410. Distinguishing cases involving the power to regulate trains.
3. The authority so exercised is an obvious case of the police power; or it may be regarded as an authority impliedly reserved when the State granted to the railroad the right to occupy the land. *Id.*

4. The order requiring the changes should be regarded as stating a condition that must be complied with if the railroad continues to use the soil of the State; but the railroad cannot be compelled to serve at a loss. P. 410.

5. There being reason to believe that safety requires the change, the facts that the execution of the plan will interfere with prior contracts and involve expenditures so heavy as to impair the efficiency of the railroad as an agency of interstate commerce or even lead to bankruptcy, do not bring the State's order into conflict with the contract or commerce clauses of the Constitution or the due process clause of the Fourteenth Amendment. P. 411.

6. The rights of the railroad company in respect of private sidings are no greater than those in respect of the main line. *Id.*

7. The burden of paying for the required changes may be laid upon an operating lessee railroad company, without regard to the financial ability of the lessors to compensate it for the required improvements if the leases should be terminated. *Id.*

8. As the railroad company might be charged the entire expense, it cannot complain that only 10 per cent. of it is cast upon a street railway company as to streets used by the latter. 412.

9. While it may be that an order of a state board directing such changes at heavy expense to a railroad company would be so unreasonable as to be void if the evidence plainly did not warrant a finding that the particular crossings were dangerous, yet such crossings are generally dangerous and the conclusion reached by the board and confirmed by the state courts is entitled to much weight and, if reasonably warranted, must stand. *Id.*

10. As a State may delegate legislative or *quasi*-legislative power to a board, subject to review in the courts (*Hall* v. *Geiger-Jones Co.*, 242 U. S. 539,) the constitutional aspect of changes ordered at grade crossings, as regards the railroad company affected, is the same whether the board ordering them was obliged to do so upon finding danger or had a discretion in the matter, under the state law. P. 413.

11. A street railway crossing the tracks of a steam road at grade increases the danger and may be obliged to bear part of the expense of removing it. *Id.*

12. And where changes are lawfully ordered, a water company is not deprived of property without due process by being obliged to adjust the pipes to the new conditions at its own expense. *Id.*

13. In being so required, a water company is not denied equal protection of the laws as compared with a street railroad company required to pay 10 per cent. of the total expense of the crossing and

presumably more than the expense of merely readjusting its tracks. P. 413.

14. *Held*, that changes ordered at railroad grade crossings involving expense to a telegraph company in adjusting its lines, did not infringe its rights under the Fourteenth Amendment or violate the commerce clause. P. 414.

15. An order and plan for abolishing grade crossings of a railroad and public streets, if otherwise valid, is not unconstitutional because it will dislocate private sidings connected with the railroad and put their owners to expense. *Id.*

89 N. L. J. 57, 24; 90 N. J. L. 672, 673, 714, 729, 677, 694, 715, affirmed.

THE cases are stated in the opinion.

*Mr. George S. Hobart* and *Mr. Charles E. Hughes* for plaintiffs in error in Nos. 33 to 39. *Mr. Gilbert Collins* and *Mr. George F. Brownell* were on the brief for plaintiff in error in Nos. 33 and 34. *Mr. William B. Gourley* was on the brief for plaintiffs in error in Nos. 38 and 39. The argument in Nos. 33 and 34 was as follows:

The order imposes a burden upon the interstate traffic of the plaintiff in error and interferes with and impairs its ability to perform its duty as an interstate carrier of freight and passengers.

So far as relates to side tracks the execution of the order requires the entire destruction of several without any provision for reconstruction or relocation, and requires the destruction of others and suggests reconstruction at different grades and locations. If the order be construed to require such cost to be paid by the side-track owners, it is invalid, as these owners are not public utilities; if it requires the cost to be paid by plaintiff in error, it is equally invalid, because plaintiff in error is not legally bound to pay, and an order requiring it so to do takes its property for the benefit of others. As neither the railroad nor the siding owners can be compelled to reconstruct and relocate the several sidings, the result

is that the sidings or the connections thereof with the main tracks are destroyed and no one can be compelled to restore them. This interferes with the interstate commerce of plaintiff in error and for that reason is in violation of the Federal Constitution. *McNeill* v. *Southern Ry. Co.*, 202 U. S. 543.

The order also operates as a regulation of interstate commerce because the great cost of carrying it out impairs the ability of plaintiff in error to perform its public duty as a common carrier of interstate traffic. Discussing: *Kansas City Southern Ry. Co.* v. *Kaw Valley District*, 233 U. S. 75; *Chicago, Burlington & Quincy R. R. Co.* v. *Wisconsin R. R. Commission*, 237 U. S. 220; *Mississippi R. R. Commission* v. *Mobile & Ohio R. R. Co.*, 244 U. S. 388. Distinguishing: *Denver & Rio Grande R. R. Co.* v. *Denver*, 250 U. S. 241.

There was no real occasion or necessity for imposing such an enormous burden upon the company in the present case. Under the statute upon which the order is based, the city might well have selected any one of the crossings, rather than combining 15 of them in a single proceeding. If 15 crossings in a single city may be considered in one proceeding, there is no reason why all of the crossings within the limits of a municipality should not be considered—indeed, there is no logical stopping place fixed by the boundary line of any municipality; we might as well include all of the grade crossings in the entire State upon any particular railroad. We do not ask this court to review the supposed discretion of the board to include more than one crossing in the same order, but we insist that under the undisputed testimony the necessary effect of an order which requires several millions to be spent within the limits of a single municipality, covering about two miles of main-line track, is a direct interference with and a burden upon the interstate commerce of plaintiff in error. There are over

2,200 miles of railroad tracks which it is necessary for plaintiff in error to maintain in an operating condition; and to appropriate a large part of the money which might be, and ought to be, used for that purpose and pour it into a single town—to the detriment of all the rest of the system, is a direct burden upon the interstate commerce; and, indeed, even more, because the inevitable result is to leave plaintiff in error no money with which to maintain the rest of its system, even if it had enough in the first instance (which the proof shows it had not) to pay the cost of eliminating the crossings in Paterson.

The order was unreasonable and arbitrary and therefore violates the due process clause, because the evidence shows without dispute that plaintiff in error did not have sufficient funds or any means of procuring them for the purpose of meeting the cost of complying.

The legislature may prescribe a standard, by which the action of an administrative board is to be governed, but when it undertakes to commit to such board certain powers which are dependent upon the existence of certain facts, the statute must itself prescribe some standard upon which the board's action is made to depend.

It is impossible to lay down any hard and fast rules for determining whether a crossing is "dangerous," and hence there is no standard upon which the action of the board in any particular case must be based. It is equally impossible to lay down any rule by which the question of whether public travel is "impeded" may be determined—unless the word "impeded" be applicable only to permanent obstructions and not merely to delays or hindrances caused by the passage of trains.

The statute confers on the board arbitrary power to order or to refuse to order the alteration of a grade crossing, even though it may find the jurisdictional facts on which the right to make such order under the statute depends.

There is no provision which requires that the orders of the commission be lawful and reasonable, as there are in many other similar statutes. See *Public Util. Comm.* v. *Toledo &c. R. R. Co.*, 267 Illinois, 93; *State* v. *Great Northern Ry. Co.*, 100 Minnesota, 445.

Furthermore, there is no standard fixed with regard to the proportion of the expense to be borne by a street railway company, as the board may, but need not, order not exceeding 10 per cent. to be paid by the street railway company.

The opinion of the state Supreme Court is not clear as to whether the statute is to be construed as permissive or as mandatory, after the board has found the jurisdictional facts as to danger to public safety, or as to impediment to public travel. If the statute be so construed as to authorize the board to order plaintiff in error to do certain work for the purpose of eliminating grade crossings, and to decline to order some one else to do like work in substantially similar circumstances; plaintiff in error is deprived of the equal protection of the laws, by being obliged to use its money and property to eliminate grade crossings, while other railroads, similarly situated, might not be required so to do. In considering the constitutionality of a statute, the question depends upon not what is done, but what might or could be done under it. *Montana Co.* v. *St. Louis Mining Co.*, 152 U. S. 160; *Security Trust Co.* v. *Lexington*, 203 U. S. 323; *Central of Georgia Ry. Co.* v. *Wright*, 207 U. S. 127; *In re Christensen*, 43 Fed. Rep. 243; *Grainger* v. *Douglas Park Club*, 148 Fed. Rep. 513.

On the other hand if, under the statute, the board has no power to consider any facts other than danger to public safety and impediment to public travel, and, therefore, cannot take into consideration the question of whether the elimination of the crossing or crossings would result in any compensating advantage to the railroad or to the

public, and cannot consider the financial ability of the railroad to do the work required by the order, the statute might as well have stated that every grade crossing must be eliminated, as every crossing, in the very nature of things, is to some extent dangerous to public safety and to some extent impedes public travel.

We submit that these are not reasonable standards upon which the action of an administrative body is to be based, and that, if this be the proper construction, the statute deprives plaintiff in error of its property without due process of law.

If it is permissive, it deprives plaintiff in error of the equal protection of the laws. If the view of the state courts, that plaintiff in error is not concerned about the construction of the statute on this point, is correct, we further submit that the evidence in the present record shows that the action of the board was unreasonable and arbitrary, because it appears, without dispute that plaintiff in error did not have the financial ability to comply with the order, and hence, if we assume, for the purpose of argument, that the statute is valid, as against the objections stated above, the question still remains whether the present order can be sustained.

Discussing: *Cattaragus Board of Trade* v. *Erie R. R. Co.*, N. Y. Pub. Serv. Comm., December 2, 1914; *St. Johnsbury* v. *Boston & Maine R. R. Co.*, Vermont Pub. Serv. Comm., P. U. Rep., 1915 A, p. 641; Maryland Pub. Serv. Comm., December 16, 1912, Reports, 1912; Report of Pub. Util. Commrs. of Connecticut, 1912, p. xlvii; Iowa Board of Railroad Commrs., Report 1913, p. 43; *Erie R. R. Co.* v. *Board of Public Utility Commrs.*, Supreme Court of New Jersey, April, 1915 (not reported); *Houston &c. R. R. Co.* v. *Dallas*, 98 Texas, 396; *Northern Central Ry. Company's Appeal*, 103 Pa. St. 621; *Pennsylvania &c. R. R.* v. *Philadelphia & Reading R. R.*, 160 Pa. St. 277; *Cleveland &c. Ry. Co.* v. *State Public Utilities Comm.*,

273 Illinois, 210; *Connecticut Co.* v. *Stamford*, 95 Connecticut, 26; *Chicago & Northwestern Ry. Co.* v. *Ochs*, 249 U. S. 416.

The foregoing authorities show that the element of expense is an important one; if it is found to be unreasonable under the circumstances of the particular case, that fact will usually suffice to demonstrate that the order is arbitrary. See also *Chicago &c. Ry. Co.* v. *Minneapolis*, 238 Fed. Rep. 384; *Health Department* v. *Trinity Church*, 145 N. Y. 32.

The order was unreasonable and arbitrary and therefore violates the due process clause because plaintiff in error was not given the alternative of reducing or eliminating the alleged danger to public safety and the alleged impairment to public travel by decreasing the number of train movements or by abandoning the railroad.

The general rule that, where a railroad has been constructed and put in operation, the company has no right to abandon the enterprise or cease to operate, does not go to the extent of requiring the continuance of operation at a loss, unless a statute expressly so provides. *Jack* v. *Williams*, 113 Fed. Rep. 823; affd. 145 Fed. Rep. 281; *Iowa* v. *Old Colony Trust Co.*, 215 Fed. Rep. 307; *Northern Pacific R. R. Co.* v. *Dustin*, 142 U. S. 492; *Amesbury* v. *Citizens Electric Ry. Co.*, 199 Massachusetts, 394; *Sherwood* v. *Atlantic &c. Ry. Co.*, 94 Virginia, 291; *Mississippi R. R. Commission* v. *Mobile & Ohio R. R. Co.*, 244 U. S. 388; *Chicago &c. Ry. Co.* v. *Minneapolis*, 238 Fed. Rep. 384.

If the company has no legal power to abandon the railroad no matter how great the loss, it should at least be given the alternative of decreasing the alleged danger and impediment by decreasing the number of train movements, especially when it proposes a reasonable and practicable scheme therefor which would greatly improve the train service to and from Paterson and would result

in a saving of at least half (and probably more) of the great burden imposed upon it by the order.

In so far as the order requires plaintiff in error to make certain changes in the properties of the Street Railway Company and in so far as it limits the proportion of the expense to be paid by the Street Railway Company to certain of the crossings to be eliminated, the order violates the due process clause for the reason that it takes the property of plaintiff in error for the use of the Street Railway Company.

The order impairs the obligation of the contracts between the plaintiff in error and the respective owners or lessees of side tracks. If construed to require the plaintiff in error to relocate or reconstruct side tracks (either on or off its right of way), at its own expense, it deprives the plaintiff in error of property, without due process of law. If not so construed, it deprives the owners or lessees of side tracks of their property, without due process of law. Citing: *Missouri Pacific Ry. Co.* v. *Nebraska,* 164 U. S. 403; *Missouri Pacific Ry. Co.* v. *Nebraska,* 217 U. S. 196; *Oregon R. R. & Navigation Co.* v. *Fairchild,* 224 U. S. 510; *Union Lime Co.* v. *Chicago & Northwestern Ry. Co.,* 233 U. S. 211; *Tap Line Cases,* 234 U. S. 1; *Northern Pacific Ry. Co.* v. *North Dakota,* 236 U. S. 585; *Great Northern Ry. Co.* v. *Minnesota,* 238 U. S. 340; *Seaboard Air Line Ry. Co.* v. *Railroad Commission of Georgia,* 240 U. S. 324; *Chicago & Northwestern Ry. Co.* v. *Ochs,* 249 U. S. 416; *Lake Erie & Western R. R. Co.* v. *Public Utilities Commission,* 249 U. S. 422, and other cases.

The case is not like that where there is a custom to construct and maintain side tracks for the benefit of industries that may adjoin the main line tracks. Here we have express written agreements. In this respect, the case differs from *Armour* v. *N. Y., N. H. & H. R. R. Co.,* 41 R. I. 361. It is more like *American Malleables Co.* v. *Bloomfield,* 83 N. J. L. 728.

We do not question the general rule that in the reasonable exercise of the police power contracts may be impaired or even canceled.

Under the various statutes and leases by virtue of which plaintiff in error runs trains through Paterson over the tracks of the Paterson & Hudson River Railroad Company and the Paterson & Ramapo Railroad Company, the legal title to the railroad property remains in the original companies. If plaintiff in error is obliged to expend the sum of three million dollars and upwards in the improvement of the properties of those companies, the question arises whether such a forced expenditure takes its property for their private benefit. These companies under their respective leases (which have been duly authorized or ratified by the legislature) may be relieved from the obligation of running trains during the term of the lease, but under the order they are also relieved from the burden of altering the crossings or even from making any financial contribution for that purpose; they are not even included as joint obligees, although plaintiff in error requested that if any order were made it be made against these two companies and plaintiff in error jointly, so that the question of the apportionment of the cost of eliminating the crossings might be determined by appropriate proceedings. As the landlords of plaintiff in error and owners of the real estate upon which the improvements required by the order are to be made, they may sit back and receive the full benefit in the vastly increased value of their property without the expenditure of one penny. There are several contingencies upon which the leases might be terminated. Even if under obligation to do so, the lessors would not be financially able to pay for the outlay. But if it be claimed that under the statute the plaintiff in error is required to make this vast expenditure for public use rather than for the private benefit of the two original companies, the statute

is objectionable as taking the property of the plaintiff in error without just compensation. Under the charters, the State may take over the property without paying more than its first cost. The facts bring this feature of the case within the principle of decision in *Myles Salt Co.* v. *Iberia Drainage District,* 239 U. S. 478.

Again, the statute violates the Fourteenth Amendment because the cost of complying with the order made by virtue thereof will greatly exceed the value of the interest of plaintiff in error in the property, and will make its investment incapable of earning a fair and reasonable return upon such investment. All the expense is charged to the plaintiff in error as the operating company, within the meaning of the statute, and the two underlying companies are not required to pay any part. The duty to operate still rests upon the two underlying companies; the mere fact that they have executed leases to some other company whereby the latter undertakes to perform that duty for them, does not relieve the original companies from their performance of such duty.

There is no valid reason for a distinction between a lessor and a lessee company which would reasonably justify the imposition of the entire cost of changes of grade upon the lessee company, without any contribution whatever from the lessor. See *New York & New England R. R. Co.* v. *Bristol,* 151 U. S. 556.

The statute, as construed, violates the contract clause in that it impairs the obligation of the contracts between plaintiff in error and the lessor companies.

The statute, as construed, violates the contract clause, in that it impairs the obligation of the contracts between the State of New Jersey and the lessor companies, to whose rights plaintiff in error has succeeded, by imposing upon plaintiff in error a greater duty, with respect to the construction and maintenance of grade crossings, than was imposed upon them.

A reserved right to alter charters does not authorize the confiscation or destruction of property of corporations, or the taking of property without compensation, and it must be construed subject to the restrictions of the state and federal constitutions forbidding the taking of property without due process of law. *Delaware, &c. R. R. Co. v. Board of Pub. Util. Commrs.,* 85 N. J. L. 28; *State v. Bancroft,* 148 Wisconsin, 124; *Berea College v. Kentucky,* 211 U. S. 45; *Grand Trunk Western Ry. Co. v. South Bend,* 227 U. S. 544; *Chicago, Milwaukee & St. Paul Ry. Co. v. Wisconsin,* 238 U. S. 491.

The statute violates the contract clause and the due process clause, in that it impairs the obligation of the contracts between plaintiff in error and the Street Railway Company by altering their respective rights and duties as fixed by said contracts; in that it fixes a maximum proportion to be paid by the Street Railway Company, without regard to the terms of the contracts and without regard to the proportion of the danger or impediment created by the Street Railway Company.

The statute violates the Fourteenth Amendment in that it is an unreasonable exercise of the police power. *Sanitary District v. Chicago & Alton R. R. Co.,* 267 Illinois, 252; *Dobbins v. Los Angeles,* 195 U. S. 223; *Lawton v. Steele,* 152 U. S. 133; *Holden v. Hardy,* 169 U. S. 366; *Connolly v. Union Sewer Pipe Co.,* 184 U. S. 540; *Otis Elevator Co. v. Chicago,* 263 Illinois, 419. Distinguishing: *New York & New England R. R. Co. v. Bristol,* 151 U. S. 556.

The question of whether a statute is a reasonable or an unreasonable exercise of the police power, depends, to a certain extent, upon the course of legislation, as well as upon general public opinion. *Muller v. Oregon,* 208 U. S. 412; *Merrick v. Halsey & Co.,* 242 U. S. 568; *Bosley v. McLaughlin,* 236 U. S. 385; *People v. Charles Schweinler Press,* 214 N. Y. 395 [followed by references to the legis-

lation respecting grade crossings, in New Jersey and in
other States].

In determining whether the police power has been
exercised in a reasonable manner, attention must
be paid to the element of cost and the practical effect
of the statute under consideration. *Wisconsin &c. R. R.
Co.* v. *Jacobson,* 179 U. S. 287; *Oregon R. R. & Navigation
Co.* v. *Fairchild,* 224 U. S. 510; *Houston &c. R. R. Co.* v.
*Dallas,* 98 Texas, 396; *Northern Central Railway Company's
Appeal,* 103 Pa. St. 621; *Pennsylvania &c. R. R.* v.
*Philadelphia & Reading R. R.,* 160 Pa. St. 277; *Cleve-
land &c. Ry. Co.* v. *State Public Utilities Comm.,* 273
Illinois, 210; *Connecticut Co.* v. *Stamford,* 95 Connecticut,
26; *Chicago &c. Ry. Co.* v. *Minneapolis,* 238 Fed. Rep.
384; *Chicago & Northwestern Ry. Co.* v. *Ochs,* 249 U. S.
416.

If the present statute is sustained, there is no limit to
the enormous burden that might thus be imposed upon a
railroad company, short of the elimination of every grade
crossing on its entire system. If an administrative body
is given power to determine as a matter of fact what
constitutes danger or impediment, and if its conclusion
in that respect is binding on the reviewing court, except
in a case where there is no evidence whatever to sustain
it, then there is no limit to what might be ordered under
such a statute, other than the sound discretion of the
administrative body to whom is committed this vast
power. [Counsel referring to and explaining the follow-
ing cases in this court: *New York & New England R. R.
Co.* v. *Bristol,* 151 U. S. 556; *Missouri Pacific Ry. Co.* v.
*Omaha,* 235 U. S. 121; *Northern Pacific Ry. Co.* v. *Duluth,*
208 U. S. 583; *St. Paul &c. Ry. Co.* v. *Minnesota,* 214 U. S.
497; *Cincinnati &c. R. R. Co.* v. *Connersville,* 218 U. S.
336; *Chicago &c. Ry.* v. *Minneapolis,* 232 U. S. 430; *Lake
Shore &c. Ry. Co.* v. *Clough,* 242 U. S. 375; *Atlantic Coast
Line R. R. Co.* v. *Goldsboro,* 232 U. S. 548; *Chicago &*

*Alton R. R. Co.* v. *Tranbarger*, 238 U. S. 67; *Great Northern Ry. Co.* v. *Clara City*, 246 U. S. 434. Also cases of railway bridges over navigable waters: *Chicago &c. Ry. Co.* v. *Drainage Commissioners*, 200 U. S. 561; *West Chicago Street R. R. Co.* v. *Chicago*, 201 U. S. 506; *Union Bridge Co.* v. *United States*, 204 U. S. 364; *Monongahela Bridge Co.* v. *United States*, 216 U. S. 177; *Hannibal Bridge Co.* v. *United States*, 221 U. S. 194.]

The present case is illustrated by *Chicago &c. Ry. Co.* v. *Minneapolis*, 238 Fed. Rep. 384. The only case in this court in which the question of the validity of a state law providing for the abolition of grade crossings has been directly involved, is the *Bristol Case, supra*, which is distinguishable both on the facts and on the statute then under consideration.

*Mr. Frank Bergen* for plaintiff in error in No. 40.

*Mr. L. Edward Herrmann* and *Mr. Frank H. Sommer*, with whom *Mr. Francis Scott* was on the brief, for defendants in error.

MR. JUSTICE HOLMES delivered the opinion of the court.

These are writs of error brought by parties interested in an order of the Board of Public Utility Commissioners of New Jersey, dated April 20, 1915, directing a change in fifteen places in the City of Paterson, where the Erie Railroad now crosses that number of streets at grade. The order was reviewed on writs of certiorari and affirmed by the Supreme Court, and on appeal by the Court of Errors and Appeals. 89 N. J. L. 57, 24. 90 N. J. L. 672, 673, 714, 729, 677, 694, 715. The Erie Railroad Company made two applications to the Supreme Court, the second being based upon a refusal by the Board to grant a rehearing of its order. Accordingly it has two writs of error here.

But the second adds nothing to the first as we could not say that the Board unreasonably refused further delay. Those of the other parties are to the judgments affirming the original order of the Board. The Erie Railroad was ordered to make the change by carrying fourteen of the crossings under, and one, at Madison Avenue, over the railroad. It will also have to bear the cost, subject to a charge to the Public Service Railway Company of ten per centum of the cost of changing three crossings used by its road. The most important questions arise in the Erie Railroad Company's case and we take that up first.

The order was made under an Act of March 12, 1913, c. 57, P. L. 1913, p. 91, which is construed by the State Courts to authorize it, subject to the constitutional questions to be dealt with here. The Erie Railroad's line in Paterson is over tracks originally belonging to the President and Directors of the Paterson and Hudson River Railroad Company and the Paterson and Ramapo Railroad Company, but now held by the Erie Railroad, by assignment of perpetual leases upon the terms that if in any unforeseen way the leases terminate the value of erections and improvements must be repaid by the lessors. They however are small corporations having no assets except their roads and the rentals received from the Erie Company. The leases were ratified by an Act of March 14, 1853, providing that they should not be held to confer any privilege or right not granted to the lessors by their charters. It is admitted that the statute must be taken to impose the duty of making the changes upon the company operating the road, the plaintiff in error, which is an interstate road. It put in evidence that it did not have assets sufficient to make the changes, at least without interfering with the proper development of its interstate commerce, and also contended that the whole evidence did not justify the finding of the Board that the crossings were dangerous to public safety but at most showed that

the change would be a public convenience. It is said that the order must be reasonable to be upheld and that it is not reasonable to require an expenditure for such a purpose of over two million dollars from a company that has not more than $100,000 available, and that the order and the statute when construed to justify it not only interfere unwarrantably with interstate commerce and impair the obligation of contracts but take the Erie Company's property without due process of law.

Most of the streets concerned were laid out later than the railroads and this fact is relied upon, so far as it goes, as an additional reason for denying the power of the State to throw the burden of this improvement upon the railroad. That is the fundamental question in the case. It might seem to be answered by the summary of the decisions given in *Chicago, Milwaukee & St. Paul Ry. Co.* v. *Minneapolis*, 232 U. S. 430, 438. "It is well settled that railroad corporations may be required, at their own expense, not only to abolish existing grade crossings but also to build and maintain suitable bridges or viaducts to carry highways, newly laid out, over their tracks or to carry their tracks over such highways." *Missouri Pacific Ry. Co.* v. *Omaha*, 235 U. S. 121; *Northern Pacific Ry. Co.* v. *Puget Sound & Willapa Harbor Ry. Co.*, 250 U. S. 332. For although the statement is said to be explained as a matter of state law by the previous decisions in Minnesota, it is made without reference to those decisions or to any local rule, and moreover the intimation of the judgment in the present case is that whatever may have been the earlier rulings the law of New Jersey now adopts the same view.

But it is argued that the order is unreasonable in the circumstances to which we have adverted, the principle applied to the regulation of public service corporations being invoked. *Mississippi Railroad Commission* v. *Mobile & Ohio R. R. Co.*, 244 U. S. 388, 391; *Chicago,*

*Burlington & Quincy R. R. Co.* v. *Railroad Commission
of Wisconsin,* 237 U. S. 220. But the extent of the States'
power varies in different cases from absolute to qualified,
somewhat as the privilege in respect of inflicting pecuniary
damage varies. The power of the State over grade cross-
ings derives little light from cases on the power to regu-
late trains.

Grade crossings call for a necessary adjustment of two
conflicting interests—that of the public using the streets
and that of the railroads and the public using them.
Generically the streets represent the more important
interest of the two. There can be no doubt that they did
when these railroads were laid out, or that the advent
of automobiles has given them an additional claim to
consideration. They always are the necessity of the whole
public, which the railroads, vital as they are, hardly can
be called to the same extent. Being places to which the
public is invited and that it necessarily frequents, the
State, in the care of which this interest is and from which,
ultimately, the railroads derive their right to occupy the
land, has a constitutional right to insist that they shall
not be made dangerous to the public, whatever may be
the cost to the parties introducing the danger. That is
one of the most obvious cases of the police power, or to
put the same proposition in another form, the authority
of the railroads to project their moving masses across
thoroughfares must be taken to be subject to the implied
limitation that it may be cut down whenever and so far
as the safety of the public requires. It is said that if
the same requirement were made for the other grade
crossings of the road it would soon be bankrupt. That
the States might be so foolish as to kill a goose that lays
golden eggs for them, has no bearing on their constitu-
tional rights. If it reasonably can be said that safety
requires the change it is for them to say whether they
will insist upon it, and neither prospective bankruptcy

nor engagement in interstate commerce can take away
this fundamental right of the sovereign of the soil. *Denver
& Rio Grande R. R. Co.* v. *Denver,* 250 U. S. 241, 246. To
engage in interstate commerce the railroad must get on
to the land and to get on to it must comply with the con-
ditions imposed by the State for the safety of its citizens.
Contracts made by the road are made subject to the
possible exercise of the sovereign right. *Denver & Rio
Grande R. R. Co.* v. *Denver,* 250 U. S. 241, 244; *Union Dry
Goods Co.* v. *Georgia Public Service Co.,* 248 U. S. 372;
*Louisville & Nashville R. R. Co.* v. *Mottley,* 219 U. S. 467;
*Northern Pacific Ry. Co.* v. *Duluth,* 208 U. S. 583; *Mani-
gault* v. *Springs,* 199 U. S. 473, 480. If the burdens im-
posed are so great that the road cannot be run at a profit
it can stop, whatever the misfortunes the stopping may
produce. *Brooks-Scanlon Co.* v. *Railroad Commission
of Louisiana,* 251 U. S. 396. Intelligent self-interest
should lead to a careful consideration of what the road
is able to do without ruin, but this is not a constitutional
duty. In the opinion of the Courts below the evidence
justified the conclusion of the Board that the expense
would not be ruinous. Many details as to the particular
situation of this road are disposed of without the need of
further mention by what we have said thus far.

The plaintiff in error discusses with considerable detail
the effect of the changes upon private sidings. But its
rights in respect of these are at least no greater than those
in respect of the main line and are covered by the pre-
ceding discussion. So are the objections that if the leases
ever are terminated it has no chance of being repaid the
value of its improvements because of the smallness of
the lessor corporations. They would have this property
in that event and it would be subject to their obligation—
but the answer to the complaint of the plaintiff in error
in all its forms is that which we have made. Whatever
the cost, it may be required by New Jersey not to im-

peril the highways if it does business there. We agree with the decisions below that as the railroad company might have been charged with the whole expense the fact that no more than ten per centum of the cost of three crossings is thrown upon a street railway company is a matter of which it cannot complain.

If we could see that the evidence plainly did not warrant a finding that the particular crossings were dangerous there might be room for the argument that the order was so unreasonable as to be void. The number of accidents shown was small and if we went upon that alone we well might hesitate. But the situation is one that always is dangerous. The Board must be supposed to have known the locality and to have had an advantage similar to that of a Judge who sees and hears the witnesses. The Courts of the State have confirmed its judgment. The tribunals were not bound to await a collision that might cost the road a sum comparable to the cost of the change. If they were reasonably warranted in their conclusion their judgment must stand. We cannot say that they were not. At some crossings the danger was less than at others, but it was necessary or at least prudent to proceed on a general plan. Upon the whole matter while it is difficult to avoid the apprehension that the state officials hardly gave due weight to the situation of the company as a whole in their anxiety for the well-being of the State, we are of opinion that they did not exceed their constitutional powers. The order should be regarded as stating a condition that must be complied with if the company continues to use the New Jersey soil. Probably the conclusion that we have reached could be supported upon the narrower ground that a continuing obligation was imposed by the charters of the plaintiff in error's lessors, and was assumed by the plaintiff in error, but that which we have stated seems to us free from doubt.

Some argument is based upon a discretion supposed

to be left to the Board by the statute, which reads that when it appears to the Board that the crossing is dangerous it may order, &c. The State Courts seem to regard the words as imposing a positive duty, but upon either construction we perceive no infraction of the company's constitutional rights. If the words are imperative the reasons that we have given apply. If they leave a discretion it is subject to review by the Courts, and this Court has no concern with the question how far legislative or *quasi*-legislative powers may be delegated to a commission or board. *Hall* v. *Geiger-Jones Co.*, 242 U. S. 539; *Engel* v. *O'Malley*, 219 U. S. 128; *Prentis* v. *Atlantic Coast Line Co.*, 211 U. S. 210, 225. We deem it unnecessary to give our reasons in greater detail for deciding that the judgment against the Erie Railroad Company must be affirmed.

While the Railroad Company contends that the Public Service Railway Company should be charged more, the latter company comes here upon the proposition that it should be charged nothing. We agree with the Courts below that a street railway crossing the tracks of a steam road at grade in a public street increases the danger and may be required to bear a part of the expense of removing it. The amount charged does not appear to be excessive and upon the principles that we have laid down the payment of it may be made a condition of the continued right to use the streets. *Detroit, Fort Wayne & Belle Isle Ry.* v. *Osborn*, 189 U. S. 383, 390; *Missouri Pacific Ry. Co.* v. *Omaha,* 235 U. S. 121, 129.

The Passaic Water Company contends that the expense of moving its pipes cannot be thrown wholly upon it — mainly on the ground that the change of grade was unlawful. This ground fails and the company must adjust itself to the lawfully changed conditions. It also contends that it does not receive the equal protection of the laws because the street railway instead of being charged

the expense of moving its tracks is charged ten per centum of the total expense at its crossings. Presumably this charge is greater than the mere adjustment of tracks to a new surface. It is based upon the share of the street railroad in creating the danger. As the street railroad cannot complain, certainly the Water Company cannot.

The Western Union Telegraph Company makes similar objections and also says that its interstate commerce is interfered with and presents from its own point of view arguments dealt with so far as they seem to us to need mention in disposing of the principal case. The other plaintiffs in error own side tracks which will be dislocated by the change and they will be put to further expense if the plan is carried out according to what the New Jersey Court decides to be suggestions not commands. The rights in the side tracks are subordinate to changes in the main track otherwise lawful. As against these as against the others the judgment of the Court of Errors and Appeals is affirmed.

*Judgments affirmed.*

THE CHIEF JUSTICE, MR. JUSTICE VAN DEVANTER and MR. JUSTICE MCREYNOLDS dissent.