**CITY OF GAINESVILLE, Georgia,**
**Plaintiff-Appellee,**

v.

**SOUTHERN RAILWAY COMPANY,**
**Defendant-Appellant.**

**No. 27335.**

United States Court of Appeals,
Fifth Circuit.

Feb. 26, 1970.

See also D.C., 296 F.Supp. 763.

Charles J. Bloch, Macon, Ga., Emory F. Robinson, Gainesville, Ga., Charles A. Horsky, James Hamilton, Washington, D. C., for appellant.

William B. Gunter, City Atty., Edgar H. Sims, Jr., Gainesville, Ga., for appellee.

Before TUTTLE, COLEMAN and SIMPSON, Circuit Judges.

TUTTLE, Circuit Judge:

This case involves basically a determination whether an ordinance of the City of Gainesville, Georgia, requiring Southern Railway Company to install and maintain entirely at its own expense automatic signalling devices where Southern's main line tracks intersect with Bradford Street, is so arbitrary and unreasonable as to be in violation of the due process and equal protection clauses of the Fourteenth Amendment to the Constitution.

The City of Gainesville originally brought suit in the United States District Court for the Northern District of Georgia to compel Southern to install the automatic signalling device at this grade crossing. Southern counterclaimed by attacking the constitutionality of the ordinance requiring it to install the signal device and the constitutionality of a Georgia enabling statute pursuant to which such local ordinance could have been enacted.

A three judge statutory court was convened pursuant to 28 U.S.C. § 2281 because of the attack on the constitutionality of the Georgia statute and prayer for an interlocutory and permanent injunction, restraining the enforcement, operation and execution of the Georgia statute. A hearing was held, and the three judge court held that this was not a three judge case and remitted the case to a single district judge. Appellant argues that this was error. We disagree.

It is clear that the City of Gainesville has the power without statutory authorization to enact a municipal ordinance under its police power requiring a railroad to either have a flagman or install signal devices at all grade crossings within the city limits. See City of Acworth v. Western & Atlantic RR Co., 159 Ga. 610, 618, 126 S.E. 454 (1924); Atlantic & B RR Co. v. Montezuma, 122 Ga. 1, 49 S.E. 738 (1904); Atlanta & West Point RR Co. v. Underwood, 218 Ga. 193, 126 S.E.2d 785 (1926). The three-judge district court found

that there was substantial evidence to support the City of Gainesville's contention that its ordinance was enacted not pursuant to the Georgia Statute but under its inherent police power as is clearly authorized by the Georgia courts. Therefore, the issue became solely an attack on a local ordinance and action of local officials not upon a state statute of general application or against state officials carrying out a state statute or policy of general application; therefore this was not a proper case for a three judge court. Ex parte Collins, 277 U.S. 565, 48 S.Ct. 585, 72 L.Ed. 990 (1928); Turner v. Fouche, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970), footnote 10.

A hearing on the constitutionality of the ordinance was held. The court's findings of facts may be summarized as follows: Southern or its predecessors had operated lines through Gainesville, now covering a distance of 1.1 mile, for 80 years or more. There are six grade crossings within the Gainesville City limits, three are protected by flashing lights and one by both flashing lights and a gate. Therefore, there are two grade crossings without automatic signal devices but which are posted by Georgia traffic signs—red highway "stop" signs and cross-buck warning signs—requiring the operators of motor vehicles to stop or to proceed with caution.

Bradford Street is one of the non-signal device crossings. It is a four lane street which crosses six Southern Railway tracks. When no railroad cars are parked on the four side tracks, vision sightings at this intersection are clear in both directions except for automobiles parked around the adjacent Southern Railway depot.

The district court also found that the number of scheduled trains crossing Bradford Street has generally decreased with only nineteen scheduled trains per twenty-four hour day in 1968 and that the number of "switchers" crossing Bradford Street has decreased from an estimated 68 per 24 hour day in 1962 to an estimated 50 per 24 hour day in 1968.

However, the court found that the danger had increased because there is an increase in vehicular traffic from an estimated 1,062 per 24 hour day in 1962 to an actual count in 1968 of 5,563 per 24 hour day. Also, three gasoline bulk plants are located near the Bradford Street crossing, and local gasoline delivery trucks cross the Bradford Street railroad crossing approximately 60 to 75 times per day. The district court, therefore, held that because of these facts, various surveys, and because two collisions between gas trucks and railroad trains occurred in 1967 and sixteen reported collisions between vehicles and Southern Railway trains at the Bradford Street railroad crossing in the past three and one-half years, two of which resulted in the death of two vehicle drivers, the installation of automatic signal devices which flash lights and ring bells upon approach of a train would substantially reduce motor vehicle-railroad train collisions at the Bradford Street railroad crossing and is therefore reasonably required to reduce such collisions. Southern Railway does not here attack this holding. Southern's contention on appeal is that *under the circumstances of this case*, it is unreasonable and arbitrary to require, as does the Gainesville ordinance, that the *total* cost of both installation and maintenance be borne entirely by the railroad. As to this contention, the district court held that:

> "The railroad argues that it is unfair to require all expense to be borne by it * * * despite the appeal to this court for a sharing of the expense burden, such argument must yield to the stated authority." [Seaboard Airlines Railroad Co. v. City of West Palm Beach, Fla., (5 Cir., 1967) 373 F.2d 328.]

The meaning of the language in West Palm Beach, *supra*, is not precisely clear.[1] It would appear from controlling authority that the language in West Palm Beach must be construed to mean that the district court had found that the issue of the *allocation of cost* had been determined to be reasonable. Moreover, the district court in its Findings of Fact, No. 14, stated: "The cost [allocation of] to the plaintiff [Seaboard] of installing, operating and maintaining safety gates at said railroad crossings is not unreasonable." Moreover, in West Palm Beach, Seaboard was not arguing for a reasonable allocation of cost but that "There can be no question that the users of these two highways would be prime beneficiaries of the addition of such gates, if any benefits accrue from such addition, which is questionable, and, therefore, the burden of the cost should be borne [entirely] by them." It was for this reason that the court stated that "This appeal fails to present a single new question of law," for Atchison, Topeka and Santa Fe RR Co. v. Public Utility Commission, 346 U.S. 346, 74 S.Ct. 92, 98 L.Ed. 51 (1942) answered in the negative the proposition that the allocation of cost must directly relate to the benefit received.

In Atchison, the Commission authorized the enlarging of two existing railroad underpasses in its desire to meet local transportation needs and to promote public safety and convenience because of the rapid growth of the community. The railroad objected to the allocation of fifty percent of the cost to it. The Court held that " * * * the [Supreme] Court has consistently held that in the exercise of the police power [by the commission], the cost of such improvements *may be allocated* all to the railroads. Erie RR Co. v. Board of Public Utility, 254 U.S. 394, [41 S.Ct. 169, 65 L.Ed. 322]." (Emphasis added.) However, the court also stated that "there is *the proper limitation that such allocation of costs must be fair and reasonable.*" (Emphasis added.) Nathville C & St. L. RR v. Walters, 294 U.S. 405,

---

1. Whatever feeling may exist that the Railroad's burden in installing safety devices must be shared, the District Court was certainly justified in concluding that the city's judgment regarding the use of its streets in the safety of its citizens was not made arbitrarily or unreasonably. West Palm Beach, *supra*, at 329.

55 S.Ct. 486, 79 L.Ed. 949 (1935).[2] The court then specifically held that *"this* [reasonableness] was the standard applied by the Commission. It was not an arbitrary exercise to refuse to allocate costs on the basis of *benefits* alone. * * * Having brought about the problem, the railroads are in no position to complain because their share in the cost of alleviating it is not based solely on the special benefits accruing to them from the improvements." 346 U.S. 353, 74 S.Ct. 96. Southern does not argue that the cost should be allocated according to benefit alone as was argued in Atchison and West Palm Beach, but that there should be several considerations, equity, benefit, degree of danger caused by Southern, and what is generally, under comparable circumstances, considered to be reasonable by courts and governmental agencies. It is clear from Atchison, that these are proper considerations. The elements of reasonableness and fairness *in the allocation of costs* in addition to the reasonableness of the *requirement of installing* the signalling device itself must be considered by the court.

In Southern Railway Co. v. City of Knoxville, 442 S.W.2d 619, 623 (Tenn. 1968) cert. den. 396 U.S. 1002, 90 S.Ct. 551, 24 L.Ed.2d 494 (1970), the court, in discussing the issue of the allocation of cost, held:

> "We agree that under the holdings of *Nashville* and *Atchison* that there could be a case arising from the particular set of facts where it would be reasonable to charge *only part* of the crossing to the railroad, and an ordinance requiring all the cost be charged to a railroad would be void as applied to that particular case, but this would not result in making the orders void per se but only as to a particular case."

We do not hold that a municipality or a state does not have full power to require a railroad company to bear all the cost for a grade crossing safety device, nor that the Gainesville ordinance is unconstitutional per se because it is an unreasonable and arbitrary exercise by the City of Gainesville of its police power, nor that benefit should be the sole measure of the allocation of cost. We find here that the district court did not make a finding as to the reasonableness of the *allocation of costs* in installing and maintaining the signal devices as to this particular case, a determination which might or might not make the application of the ordinance unconstitutional. Therefore, we conclude that we must remand the case to the district court for a determination as to the reasonableness under all of the circumstances, of the allocation of one hundred percent of the cost to Southern Railway.

The judgment is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

---

2. It should be noted that in Erie, *supra,* when the court held that the state may require the railroad to bear all of the cost it stated: " * * * the State * * * has a constitutional right to insist that they [streets] shall not be made dangerous to the public, whatever may be the cost to *the parties introducing the danger* (emphasis added)." Here, Southern argues that it only contributes at most to the *present danger.*