**SOUTHERN RAILWAY COMPANY,**
**Plaintiff,**

v.

**CITY OF MORRISTOWN, Defendant.**
**Civ. A. No. 2357.**

United States District Court,
E. D. Tennessee,
Northeastern Division.

June 30, 1970.

Supplemental Opinion Nov. 18, 1970.

William H. Inman, Morristown, Tenn., for plaintiff.

James K. Miller, Morristown, Tenn., for defendant.

## MEMORANDUM OPINION AND ORDER

NEESE, District Judge.

This is a diversity action, 28 U.S.C. § 1332(a) (1), (c), by a railroad carrier, seeking a declaratory judgment, that a certain ordinance enacted by the defendant municipality is invalid. 28 U.S.C. § 2201. With the consent of the defendant, against which it is directed, Rule 65(b), Federal Rules of Civil Procedure, an order restraining temporarily the de-fendant's enforcement of the provisions of the ordinance at issue has been extended until the final adjudication of the issues herein.

The facts essential to this consideration are: a main line of the plaintiff's railroad tracks bisects the city of Morristown, Tennessee. The legislative body of the defendant municipality enacted on January 7, 1969 its ordinance no. 1575, which requires the plaintiff to install and operate entirely at its expense automatic signal devices and crossing gates at three of the grade-crossing intersections of said main line with three respective streets of such municipality. The reason and motivation for such enactment were solely for considerations of the health, safety and welfare of the people affected. Basically, the plaintiff claims, *inter alia*, that the ordinance is an abuse of the defendant's exercise of its police power, that the traffic controls ordered are not reasonably necessary, and that it is unreasonable for the defendant to require the plaintiff to bear the entire cost of the installation and maintenance of such signals.

[ ▇ ] It is clear under the substantive law of Tennessee, which is applicable hereto, and apparently unquestioned, that the defendant municipality had and has the power, at least by implication, to require the protective devices to be installed and maintained at street-railway intersections where they are reasonably needed, and that the ordinance under consideration has a reasonable and substantial relationship to the promotion of the health, safety and comfort of the general public. Southern Railway Company v. City of Knoxville (1968), 442 S. W.2d 619, 622, certiorari denied (1970), 396 U.S. 1002, 90 S.Ct. 551, 24 L.Ed.2d 494. As conceded by the Tennessee Supreme Court therein

\* \* \* there could be a case arising from a particular set of facts where it would be reasonable to charge only a part of a crossing to a railroad, and an ordinance requiring all the cost [to] be charged to a rail-

road would be void as applied to that particular case, but this would not result in making the ordinance void per se but only as to a particular case. *Ibid.*, 442 S.W.2d at 624. " * * * [W]hen particular individuals are singled out to bear the cost of advancing the public convenience, that imposition must bear some reasonable relation to the evils to be eradicated or the advantages to be secured. * * * " Nashville, C. & St. L. Ry. v. Walters (1935), 294 U.S. 405, 429, 55 S.Ct. 486, 495 [4], 79 L.Ed. 949. Proper considerations in deciding such reasonable relation are: equity, benefit, degree of danger caused by the plaintiff, and what is generally, under comparable circumstances, considered to be reasonable by courts and governmental agencies. City of Gainesville v. Southern Railway Company, C.A.5th (1970), 423 F.2d 588, 590 [3].

It was considered by Court and all counsel that there could be a disposition of this lawsuit on its merits under the stipulation of facts filed herein. However, a careful study of the factors to be considered, *supra*, in the light of the stipulated facts, discloses that such an adjudication cannot be made intelligently by the Court with the record in the present posture. That being the situation presented, the Court must fashion some order which will tend to produce a record herein which will enable the Court to administer justice between the adversary parties, unless additional facts are stipulated which renders this possible.

█ Although there is an implication in the *Gainesville case, ibid.*, [4] that the trial court is to make such findings, this Court is of the opinion that, (unless the gaps in the stipulated facts are supplied adequately,) the factual considerations, which prompted the legislative body to allocate one hundred per cent of the cost to the plaintiff, cannot be declared reasonable or unreasonable under all of the circumstances judicially, unless the defendant's legislative body sets forth in the body of its enactment its considered findings. In other words, the subjective

findings of the legislative body enacting the ordinance, not the objective findings of the tribunal confronted with the responsibility of testing the reasonableness of those findings, are crucial.

As both parties have moved for summary judgments, Rules 56(a), (b), Federal Rules of Civil Procedure, solely for the purpose of allowing the defendant's legislative body time in which to include its considered findings as a part of the ordinance it has passed, such motion of the plaintiff hereby is granted, that of the defendant hereby is denied, and the temporary restraining order will remain in effect until compliance within a reasonable time by the defendant with the sense of this opinion.

## SUPPLEMENTAL OPINION

Pursuant to the Court's order of June 30, 1970, the defendant City of Morristown enacted its ordinance no. 1813, which amends and supplements its ordinance no. 1575, to which there was advertence herein earlier by the Court. The defendant has reinstituted its motion for a summary judgment, Rule 56(b), Federal Rules of Civil Procedure, and the plaintiff has renewed its application for relief. The judgment sought by the defendant will be rendered forthwith, the pleadings, exhibits and stipulations on file showing that there is no genuine issue of material fact extant between the parties, and that the defendant is entitled to a judgment as a matter of law. Rule 56(c), Federal Rules of Civil Procedure.

The amendatory and supplemented ordinance referred to reflects that the public improvements at certain of its railroad grade crossings were instituted by the City of Morristown " * * * to meet local transportation needs and further safety and convenience, made necessary by the rapid growth of the [community]. In such circumstances, [the Supreme] Court has consistently held that in the exercise of the police power, the cost of such improvements *may be* allocated all to the railroads. * * * There is the proper limitation that such

allocation of costs must be fair and reasonable. * * *" Atchison, Topeka & S. F. R. Co. v. Public Utilities Commission (1953), 346 U.S. 346, 352, 74 S.Ct. 92, 96, 98 L.Ed. 51, 60 (headnote 4). "* * * There should be several considerations, equity, benefit, degree of danger caused by Southern, and what is generally, under comparable circumstances, considered to be reasonable by courts and governmental agencies. It is clear from Atchison, that these are proper considerations. The elements of reasonableness and fairness *in the allocation of costs* in addition to the *requirement of installing* the signalling device[s] * * * must be considered by the court. * * *" City of Gainesville v. Southern Railway Company, C.A.5th (1970), 423 F.2d 588, 591 [3].

█ The stipulated facts and exhibits now demonstrate by a preponderance of the evidence that the aforementioned ordinance no. 1813 of the defendant City of Morristown does not constitute an abuse of its police power, that the traffic controls ordered to be installed are reasonably necessary, and that it is reasonable for the City of Morristown to require the plaintiff Southern Railway Company to bear the entire cost of the installation and maintenance of signals at the grade crossings on Fairmont Street, High Street, and Industrial Avenue. The elements of equity, benefit, and degree of danger caused by Southern's movement of its trains through the City of Morristown are set forth as follows:

Of the 27% of the local crossings which are already electrically controlled, the plaintiff Southern Railway installed such signals and maintains them at its own expense. If electrical signals were installed at Fairmont Street, High Street, and Industrial Avenue, still only 36% of the 33 crossings within the City of Morristown would be electrically signalled. High Street and Fairmont Streets are main north-south arteries feeding into a recently completed large Urban Renewal Project, which project includes a new city-county high school.

A June, 1969 traffic count showed that Fairmont Street averaged 4,200 vehicles over an 11½ hour period from 6:00 a. m. to 5:30 p. m.; that High Street averaged 3,668 vehicles over the same period; and that Industrial Boulevard averaged 1,579 over the same period. The figures for Industrial Boulevard are unrealistic for current figures, as the crossing at Industrial Avenue is the main access road to the Morristown Industrial Park which now has 9 industries with approximately 2,000 employees traveling to and from the area each day and which has recently led to heavy congested traffic, particularly at shift changes. Both the Fairmont Street and High Street crossings are blind crossings. At Fairmont, a driver traveling south has his view blocked to the west by a business building as he approaches the railroad tracks until he is a few feet from said tracks. A north-bound driver has his view blocked to the west by freight cars parked on a siding which serves Gluck Brothers, a local furniture manufacturer. At High Street, south-bound traffic has its view to the west blocked by a filling station situated near the south of said tracks and north-bound traffic has its view blocked by a business building. The total cost of installing automatic signals at the three crossings contemplated would be $50,700.00 with an annual maintenance charge of $3,600.00. In connection with a new east-west traffic artery in the city, an overpass was constructed by the city at a cost of $200,-000.00, no part of which was borne by Southern Railway Company. In recent years there have been five accidents at the Fairmont Street crossing and five at the High Street crossing. Said accidents have resulted in payments by the Southern Railway Company of $102,281.-05, with an appealed judgment currently pending before the Tennessee Supreme Court of $350,000.00. The $50,700.00 cost of installation is $149,300.00 less than the $200,000.00 cost to the city of the recently completed overpass and is $51,581.05 less than the $102,281.05 that

Southern has paid out in judgments for accidents at said intersections.

Thus, ordinance no. 1575, as modified by ordinance no. 1813, of the City of Morristown, hereby is declared to be valid. The motion of the defendant for a summary judgment hereby is granted. The plaintiff hereby is denied all relief. Rule 58, Federal Rules of Civil Procedure.