**SOUTHERN RAILWAY COMPANY, Plaintiff-Appellant,**

v.

**CITY OF MORRISTOWN, Defendant-Appellee.**

No. 71–1032.

United States Court of Appeals, Sixth Circuit.

Sept. 22, 1971.

Charles A. Horsky, Washington, D. C., for plaintiff-appellant; David H. Hickman, Washington, D. C., Wm. H. Inman, Morristown, Tenn., on brief.

James K. Miller, Morristown, Tenn., for defendant-appellee.

Before PHILLIPS, Chief Judge, and McCREE and MILLER, Circuit Judges.

WILLIAM E. MILLER, Circuit Judge.

This case involves a determination whether Ordinance Number 1813 (dated August 4, 1970) of the City of Morristown, Tennessee, requiring Southern Railway Company to install and maintain entirely at its own expense three automatic signals at street-railway crossings in the city is arbitrary and unreasonable in light of all the circumstances

and therefore in violation of the due process and equal protection clauses of the Fourteenth Amendment to the Constitution.

The action was instituted by Southern in the United States District Court for the Eastern District of Tennessee, Northeastern Division, seeking a declaratory judgment declaring invalid Ordinance Number 1764 of the City of Morristown (dated January 7, 1969), and temporary and permanent injunctive relief prohibiting its enforcement. Ordinance Number 1764 was essentially identical to the ordinance before us except that it contained no legislative findings. Following a pretrial conference at which the parties stipulated facts, Southern moved for summary judgment. The District Court granted the motion, stating in its memorandum opinion and order (filed June 30, 1970):

> Although there is an implication in the *Gainesville* case, ibid., that the trial court is to make such findings, this Court is of the opinion that, (unless the gaps in the stipulated facts are supplied adequately) the factual considerations, which prompted the legislative body to allocate one hundred per cent of the cost to the plaintiff, cannot be declared reasonable or unreasonable under all of the circumstances judicially, unless the defendant's legislative body sets forth in the body of its enactment its considered findings. In other words, the subjective findings of the legislative body enacting the ordinance, not the objective findings of the tribunal confronted with the responsibility of testing the reasonableness of those findings, are crucial.

Previously in its opinion the court had outlined the sort of considerations pertinent to such a determination:

> Proper considerations in deciding such reasonable relation are: equity, benefit, degree of danger caused by the plaintiff, and what is generally, under comparable circumstances, considered to be reasonable by courts and governmental agencies. [Citing City of

Gainesville v. Southern Railway Company, 423 F.2d 588, 590 (5th Cir. 1970)].

The court stated that its purpose in granting the motion and keeping in effect a temporary restraining order was to allow "compliance within a reasonable time by the defendant with the sense of this opinion," so that the city might make a determination as to whether the requirements of due process and equal protection had been met. The city's legislative body then passed Ordinance Number 1813, amending and supplementing Ordinance Number 1764. Southern renewed its application for relief and the city moved for summary judgment. Again relying on *City of Gainesville* and detailing the factors declared therein to be relevant to such determinations, the district court held:

> The stipulated facts and exhibits now demonstrate by a preponderance of the evidence that the aforementioned Ordinance Number 1813 of the defendant City of Morristown does not constitute an abuse of its police power, that the traffic controls ordered to be installed are reasonably necessary, and it is reasonable for the City of Morristown to require the plaintiff Southern Railway Company to bear the entire cost of the installation and maintenance of signals at the grade crossings on Fairmont Street, High Street, and Industrial Avenue.

The findings of the district court are set forth in the appendix.

We agree with the district court's determination that under the circumstances the City of Morristown acted neither arbitrarily nor unreasonably in allocating to the Southern Railway Company one hundred percent of the cost of installing and maintaining the safety devices. Because of the force and persuasiveness with which Southern advances its position, it is well to review the applicable legal principles and to focus on the particular factual situation before us.

Southern relies primarily on Nashville, C. and St. L. Ry. v. Walters, 294 U.S. 405, 55 S.Ct. 486, 79 L.Ed. 949 (1935). There the court, in a typically careful and detailed opinion by Mr. Justice Brandeis, found arbitrary and unreasonable the application of a state statute authorizing the State Highway Commission to require the separation of grades when a state highway crosses a railroad and when the Commission finds it necessary for the protection of travelers. As the court stated, "without conferring upon the commission any discretion as to the proportion of the cost to be borne by the railroad [the statute] require[d] the latter to pay in every case, one-half of the total cost of the separation of grades." Southern correctly sees the *Nashville* case as highlighting an evolutionary shift by both courts and legislatures away from mechanical application of the maxim, "He who creates and maintains upon his premises a condition dangerous to others is under an obligation to guard it and protect it *so* that injuries to third persons may not result therefrom."[1] And, indeed, appellant is correct in stating that: "The Supreme Court thus established—more than 35 years ago—that with respect to grade crossings, no less than in other areas, there are considerations of equity, reasonableness, and beneficial interest which apply to the exercise of the police power," citing Nashville, C. & St. L. Ry. v. Walters, *supra.*

However, Mr. Justice Brandeis also made it quite clear that, while the 50% allocation of costs then before the court was unreasonable and arbitrary in light of the "special facts" of the case, an allocation of the entire cost would often be perfectly fair and reasonable. He stated:

It (the Railway) concedes that in Tennessee, as elsewhere, the rule has long been settled that, ordinarily, the state

*may*, under the police power, *impose upon a railroad the whole cost of eliminating a grade crossing*, or such part thereof, as it deems *necessary*. The claim of unconstitutionality *rests wholly upon the special facts* here shown. Nashville, C. & St. L. Ry. v. Walters, 294 U.S. 405, at 413, 55 S. Ct. 486, at 487, 79 L.Ed. 949. Cf. cases cited id. n. 3 at 413, 55 S.Ct. 486 and Erie R. R. Co. v. Board of Public Utility, 254 U.S. 394, 41 S.Ct. 169, 65 L.Ed. 322 (1921) (emphasis added).

Three different sets of factors, none of which are present in the instant case, seem to have led to the result reached by the court in the *Nashville* case. First, as noted above, the act whose application was questioned was a state statute which allocated to the railroad 50% of the cost of the improvement in all cases which fell into a broad class, not allowing the Highway Commission any discretion to allocate cost among the parties in a manner fair and reasonable in light of all the circumstances. This, in itself, would seem to be the essence of arbitrariness.

Second, the Tennessee Supreme Court, in reversing the trial court and approving the application of the statute did not consider the circumstances pertinent to the allocation of costs.

Third, the facts surrounding the imposition of costs in *Nashville* strongly supported a finding of arbitrariness and unreasonableness. This was pointed out by the Supreme Court in Atchison, T. & S. F. R. Co. v. Pub. Util. Comm'n, 346 U.S. 346, 74 S.Ct. 92, 98 L.Ed. 51 (1953), where it stated:

The grade separation ordered in the *Nashville* case was located in the rural community of Lexington, Tennessee, which had a population in 1910 of 1,497, in 1920 of 1,792, and in 1930 of 1,823. The improvement was not re-

---

1. Cf. Continental Improvement Co. v. Stead, 95 U.S. 161, 24 L.Ed. 403 (1877). Summarizing the early cases, a Note in the Harvard Law Review in 1913 points out that "since the railroad and not the highway use creates the danger, it is not unreasonable that the former rather than the latter should bear the cost of removing it." 26 Harv.L.Rev. 169, 170.

quired to meet the transportation needs of Lexington and was being constructed without regard to that community's growth or to considerations of public safety and convenience resulting from such growth. The highway there under improvement was part of the State highway system and the grade was to be removed primarily as part of economic and engineering planning and to qualify the improvement of the highway for federal aid. 346 U.S. at 353, 74 S.Ct. at 96–97.

As in the *Atchison* case, the "special facts" of the case before us paint a picture different from *Nashville*.

In the *Atchison* case it appears from the opinion that the railroad relied on *Nashville, supra,* in much the same fashion as Southern does here. Before distinguishing the facts before it from those of the *Nashville* case the court stated:

> The appellants rely heavily on the *Nashville* case, supra, but that decision is in accord with the long-established rule which we here follow and which the Commission applied. As this Court said in the *Nashville* case: "The claim of unconstitutionality rests wholly upon the special facts here shown." 346 U.S. at 353, 74 S.Ct. at 96.

In the preceding paragraph the court had stated the applicable rule thusly:

> * * * this Court has consistently held that in the exercise of the police power, the cost of such improvements *may be* allocated all to the railroads

(citing cases). There is the proper limitation that such allocation of costs must be fair and reasonable. 346 U.S. at 352, 74 S.Ct. at 96.

In the *City of Gainesville* case, *supra,* relied on by the appellant, the Fifth Circuit was presented a case in which the trial court had not based its approval of allocation of costs to Southern on a careful consideration of all the circumstances. The court of appeals found that the court below had thereby failed to perform its function of judicial review of legislative enactments in a manner consistent with the pronouncements of the *Nashville* case and reversed and remanded for a determination based on "all of the circumstances" surrounding the allocation.[2] In so doing Judge Tuttle gave the district court guidance as to considerations which should weigh in such a determination. He thus stated:

> Southern does not argue that the cost should be allocated according to benefits alone as was argued in *Atchison* and *West Palm Beach* [Seaboard Air Line Railroad Co. v. City of West Palm Beach, 5 Cir., 373 F.2d 328] but that there should be several considerations, equity, benefit, degree of danger caused by Southern, and what is generally, under comparable circumstances, considered to be reasonable by courts and governmental agencies. 423 F.2d at 591.

The factual circumstances surrounding the improvement and its allocation of its cost to Southern do not suggest that Southern has been dealt with arbitrarily or in unreasonable fashion. The

---

2. Judge Tuttle made quite clear the nature and scope of the *City of Gainesville, supra,* holding:

> We do not hold that a municipality or a state does not have full power to require a railroad company to bear all the cost for a grade crossing safety device, nor that the Gainesville ordinance is unconstitutional per se because it is an unreasonable and arbitrary exercise by the City of Gainesville of its police power, nor that benefit should be the sole measure of the allocation of cost. We find here that the district court did not make a finding as to the reason-

ableness of the *allocation of costs* in installing and maintaining the signal devices as to this particular case, a determination which might or might not make the application of the ordinance unconstitutional. Therefore, we conclude that we must remand the case to the district court for a determination as to the reasonableness under all of the circumstances, of the allocation of one hundred percent of the cost to Southern Railway. City of Gainesville v. Southern Railway Company, *supra,* 423 F.2d at 591.

findings of the district court show that the crossings in question were hazardous and that the safety devices are necessary to protect the safety of both rail and highway travelers; that accidents at these crossings have resulted in considerable expense to Southern; that the improvement was necessary for public safety and convenience in light of the community's growth; and that the city had recently constructed an overpass in connection with a new east-west traffic artery at a cost of $200,000 which it bore entirely.

We conclude that the district court acted properly in granting summary judgment in favor of the City of Morristown and that its judgment should be and it is hereby

Affirmed.

## APPENDIX

Judge Neese stated in his findings:

The elements of equity, benefit, and degree of danger caused by Southern's movement of its trains through the City of Morristown are set forth as follows:

Of the 27% of the local crossings which are already electrically controlled, the plaintiff Southern Railway installed such signals and maintains them at its own expense. If electrical signals were installed at Fairmont Street, High Street, and Industrial Avenue, still only 36% of the 33 crossings within the City of Morristown would be electrically signalled. High Street and Fairmont Streets are main north-south arteries feeding into a recently completed large Urban Renewal Project, which project includes a new city-county high school. A June, 1969 traffic count showed that Fairmont Street averaged 4,200 vehicles over an 11½ hour period from 6:00 a. m. to 5:30 p. m.; that High Street averaged 3,668 vehicles over the same period; and that Industrial Boulevard averaged 1,579 over the same period. The figures for Industrial Boulevard are unrealistic for current figures, as the crossing at Industrial Avenue is the main access road to the Morristown Industial Park which now has 9 industries with approximately 2,000 employees traveling to and from the area each day and which has recently led to heavy congested traffic, particularly at shift changes. Both the Fairmont Street and High Street crossings are blind crossings. At Fairmont, a driver traveling south has his view blocked to the west by a business building as he approaches the railroad tracks until he is a few feet from said tracks. A northbound driver has his view blocked to the west by freight cars parked on a siding which serves Gluck Brothers, a local furniture manufacturer. At High Street, southbound traffic has its view to the west blocked by a filling station situated near the south of said tracks and northbound traffic has its view blocked by a business building. The total cost of installing automatic signals at the three crossings contemplated would be $50,-700.00 with an annual maintenance charge of $3,600.00. In connection with a new east-west traffic artery in the city, an overpass was constructed by the city at a cost of $200,000.00, no part of which was borne by Southern Railway Company. In recent years there have been five accidents at the Fairmont Street crossing and five at the High Street crossing. Said accidents have resulted in payments by the Southern Railway Company of $102,281.05, with an appealed judgment currently pending before the Tennessee Supreme Court of $350,-000.00. The $50,700.00 cost of installation is $149,300.00 less than the $200,-000.00 cost to the city of the recently completed overpass and is $51,581.05 less than the $102,281.05 that Southern has paid out in judgments for accidents at said intersections.