NUTLEY - TIMES SQUARE SERVICE, INCORPORATED, PROSECUTOR, v. BOARD OF PUBLIC UTILITY COMMISSIONERS, DEFENDANT.

Submitted May 13, 1932—Decided August 27, 1932.

Before Justices PARKER, CAMPBELL and LLOYD.

For the prosecutor, *M. Casewell Heine.*

For the defendant, *John A. Bernhard.*

The opinion of the court was delivered by

PARKER, J.   The writ calls for "a certain decision rendered February 19th, 1932, by the board of utility commissioners," &c.   That decision is included in the return, together with the order made in pursuance thereof, which, after all, is the action to be reviewed.   The order is not lengthy, and its text may as well be reproduced in full:

"This matter having been duly heard by the board of public utility commissioners, and the board having filed on the date hereof its decision, which decision by reference thereto herein is made part hereof, and the board having found and determined that the Nutley-Times Square Service,

Incorporated, is operating an auto bus line between Nutley, New Jersey, and New York City, and that the equipment which is being operated by said company is not in accordance with regulation B-7, as amended, adopted by this board, and further, that the said company has failed to file a copy of its liability insurance policy with the board, and that such operation is unlawful, the board—

"Hereby orders and directs that said Nutley-Times Square Service, Incorporated, to discontinue such operation within the State of New Jersey on its route between Nutley, New Jersey, and New York City, unless and until the equipment operated by said company shall comply with regulation B-7, as amended, adopted by this board, and the said company shall have filed a copy of its liability insurance policy with this board.

"This order shall become effective March 1st, 1932."

Regulation B-7 is not included in the printed book, but we are informed by the brief of counsel that "Regulation B-7 as amended by the board of public utility commissioners divides auto buses into two classes known as A and B. A is defined as city type, single deck. B is defined as parlor car type, single deck, applicable to both types. Regulations provide for body dimensions of a *maximum* of thirty-two feet including bumpers and a *minimum of sixteen feet* with a maximum and minimum width of eight and seven feet outside measurement and a maximum inside height of six feet nine inches and a minimum of six feet four inches in the center (minimum height for class B buses five feet).

"Provisions follow for window guards, guard rail, partition behind the driver, a minimum clearance of twenty-four inches at the service door and an emergency door in the center, rear or otherwise, which shall be so constructed that no permanent obstruction will interfere with the passengers' use of this rear emergency door. The aisle seats are provided for, and an aisle of a full width of not less than twelve inches. There are further provisions for a panel on the front end of the bus body, grab handles inside the vestibule

and also for standees, ventilators, heating system, an inside lighting system and other specifications as to chassis frame, bumper, brakes, tires, &c., which clearly indicate that they are designed for a motor bus."

Prosecutor operates a line of three Lincoln seven-passenger sedans between Nutley, Essex county and Times Square, New York City, hourly, on a definite schedule and at a fixed tariff. They are licensed in Nutley as taxicabs. The principal questions raised are whether they are in law "auto buses" and if so, whether they are amenable to the public utility rules although engaged in interstate traffic.

It is urged for the prosecutor that these three sedans are not "auto buses;" that if they are, the regulations of the board do not include them; and if these points be held adversely, then that the regulations are unconstitutional as an interference with interstate commerce.

This last point may as well be disposed of at the outset. It is clear that regulation B-7, if correctly abstracted in the brief, relates essentially to the safety and comfort of passengers; and the requirement that an insurance policy be posted (which we understand has been complied with) is naturally germane to the same object. We have never understood that state regulations looking to proper equipment of public conveyances, speed of trains, maintenance of tracks and crossings, &c., amounted to an unconstitutional interference with interstate commerce. *Erie Railroad Co.* v. *Board,* 89 *N. J. L.* 57; *affirmed,* 90 *Id.* 672, 673; 41 *Sup. Ct.* 169; 254 *U. S.* 322; 65 *Law Ed.; Penn Jersey, &c., Co.* v. *Camden,* 6 *N. J. Mis. R.* 813; *Peoples Rapid Transit Co.* v. *Atlantic City,* 105 *N. J. L.* 286; *affirmed,* 106 *Id.* 587; *Lehigh Valley Railroad* v. *Board,* 278 *U. S.* 24. We hardly think that the point is seriously pressed.

The point first suggested, that these sedans are not in the class of "auto buses" rests on a manifest misinterpretation of the language of the act of 1926 (*Pamph. L., p.* 219), amending the act of 1916, chapter 136, and defining an auto thus:

"1. The word 'auto bus' as used herein shall mean and include any automobile or motor bus carrying passengers for hire which is held out, announced or advertised to operate or run, or which is operated or run, over any of the streets or public places in any municipality of this state, and indiscriminately accepts and discharges such persons as may offer themselves for transportation either at the termini or points along the way or route on which it is used or operated or may be running. Nothing herein contained shall be construed to include taxicabs, hotel buses, or buses employed solely in transporting school children and teachers."

Counsel in his brief copies only the first clause, and says an auto bus is defined as "any automobile or motor bus carrying passengers for hire," omitting the later language, on which, however, he relies in another part of the argument.

That cars of the sedan class are intended to be covered by the legislation in some cases is indicated by subdivision 3 of section 3 of chapter 146 of the laws of 1926, which provides that:

"Nothing herein contained shall extend the powers of the board of public utility commissioners to include any supervision and regulation of, or jurisdiction and control over the operation of any auto bus with a carrying capacity of *not more than six* passengers now or hereafter operated under municipal consent upon a route established *wholly within the limits of a single municipality* \* \* \*."

Undoubtedly these Lincoln sedans, used, as stated, as an hourly transportation line between Nutley and New York, charging a cash fare, are "auto buses" within the statutory definition, and amenable to the regulations of the board, which by chapter 80 of the laws of 1927, is invested with "authority to prescribe reasonable rules and regulations with respect to the construction and equipment of any auto bus or other buses carrying passengers between points in New Jersey and points in other states."

The regulations as laid before us also clearly include the sedans in question and make them unavailable for this class

of service. It is argued that the order is unreasonable and deprives prosecutor of certain rights, particularly the right to transport passengers for hire in an interstate journey. The presumption is that the regulation is a reasonable one; and we are not prepared, in the absence of any evidence whatever bearing on that point, to adjudge that it is unreasonable.

The point is made that the board previously held that it had no jurisdiction in this matter, and is bound by that decision. If a court may have a rehearing and reverse its prior holding, there seems to be no reason why the board may not exercise the same privilege.

Jurisdiction is further challenged on the ground (a) that the cars are already licensed as taxicabs. We fail to see any controlling force in that fact. (b) That certain special features, such as absence of an absolutely fixed route, and calling at the homes of intending passengers on telephone requisition, take these cars out of the auto bus class. We think the language of the 1926 act clearly broad enough to cover them.

Finally, that the filing of insurance was waived. What was waived was argument of the point, in view of the agreement of counsel to comply with that requirement without prejudice to the general merits.

The order under review will be affirmed, with costs.