PUBLIC SERVICE CO-ORDINATED TRANSPORT, PROSECU-
TOR, v. BOARD OF PUBLIC UTILITY COMMISSIONERS
ET AL., DEFENDANTS.

Argued October 7, 1942—Decided August 13, 1943.

Before Justices CASE, DONGES and COLIE.

For the prosecutor, *William H. Speer.*

For the defendants, *Hobart, Minard & Cooper* (*Duane E. Minard* and *John J. Gaffey*).

PER CURIAM.

This writ of *certiorari* brings up for review an order of the Board of Public Utility Commissioners. It is agreed between the parties hereto, Public Service Co-ordinated Transport, prosecutor, and Erie Railroad Company, defendant, that:

"The only question in controversy is whether the decisions dated June 29th, 1939, and March 27th, 1941, respectively, of the Board of Public Utility Commissioners are valid under Chapter 57 of the laws of New Jersey, approved March 13th,

1913; that is to say, did the Board err in and by said order of June 5th, 1941, in refusing to add to Erie's cost of the project, expenses incurred by Public Service in altering its property and structures in compliance with the order of April 20th, 1915, for the purpose of ascertaining the total cost to which Public Service's 10% was to be applied, and deducting from the amount of the 10% so ascertained the amount of Public Service's expenses, in determining the amount of money payable by Public Service under the statute and said order of April 20th, 1915."

The order of the Board of April 20th, 1915, was made in pursuance of the Fielder Act, chapter 57 of the laws of 1913. That order directed the elimination of certain grade crossings in the City of Paterson and provided, among other things:

"And it appearing to the Board that the street railway operated by Public Service Railway Company uses the said crossings at (1) Park Avenue and Market Street, (2) Broadway, and (3) River Street, the Board in accordance with the power and authority vested in it by said act further orders the Public Service Railway Company to pay ten per centum of the alterations, changes, relocation and opening, required by this order, including damages to adjacent property, directly chargeable to the crossings, and each of them so used by the said street railway operated by it.

"And the said Erie Railroad Company and said Public Service Railway Company are ordered to keep specific and complete records of the expenses directly chargeable to the crossings and each of them, so used by said street railway of said Public Service Railway Company and leave is hereby given to said companies, or either of them, to make application to the Board for further order in the event that they cannot agree upon the amount of such expenses so directly chargeable to said crossings used by the street railway operated by said Public Service Railway, or any of them."

It is observed that this order of 1915 does not specifically determine the question posed in the above quotation from the stipulation in the present case.

The pertinent portions of the Fielder Act, *Pamph. L.* 1913, p. 91, are as follows:

"2. The entire expense of such alterations, changes, relocation or opening, including damages to adjacent property, shall be paid by such railroad, unless a street railway uses such crossing, in which event the board may order not exceeding ten per centum of such expense directly chargeable to the crossing used by the street railway company, to be paid by the company operating such street railway and the balance to be paid by the company operating such railroad."

"4. Where the order of said board shall require changes in, or the removal of the property or constructions of any telegraph, telephone, gas, electric, lighting, power, water, oil, pipe lines or other company or corporation, co-partnership or individual, they shall, at their own expense, move or change the grade or location of their property or constructions in conformity with the order of said board. They shall be deemed parties in interest and shall be given notice of hearing and an opportunity to be heard."

The Board of Public Utility Commissioners has determined $470,604.16 as the total cost to the Erie Railroad Company of the elimination of the crossings in question. The Public Service expended the sum of $22,261.60. The question is, is the "entire expense," and the "such expense," mentioned in section 2 of the Fielder Act of which the street railway may be required to pay ten per cent., $470,604.16 plus $22,261.70, which amounts to $492,865.76 of which the Public Service must pay $49,286.58 and has already paid $22,261.60; or is the "entire expense" the $470,604.16 expended by the Erie of which Public Service must pay $47,060.42 plus all its own expense. The Board has determined that the latter of these propositions is the true construction of the statute and Public Service challenges that holding.

It is to be noted that in section 4 of the act, where the entire cost of moving their facilities is imposed upon certain utility companies, street railway companies are not specifically mentioned. They are mentioned in section 2 and only in section 2, and we are of the opinion, therefore, that they are affected only by section 2 and not by the provisions of section 4. This view is supported by the fact that when the statute

was amended in 1930, chapter 101, *R. S.* 48:12–63, by which amendment the railroad companies were required to pay only 50% of the cost of eliminating crossings and the requirement that the street railway pay 10% was abolished, section 4 was also amended to include street railways in the class of utilities required to pay all their own costs.

The original order of the Board of April 20th, 1915, was challenged in the courts in several proceedings. While the point now raised was not involved in those cases the language used in the several opinions is not without pertinence. Mr. Justice Garrison, speaking for this court in *Public Service Railway Co.* v. *Board of Public Utility Commissioners,* 89 *N. J. L.* 24, said (at *p.* 27):

"The fact that by such a collision as we have suggested the lives of the passengers on the steam railroad are also imperiled, so far from demonstrating that the entire expense of eliminating the dangerous condition should be borne by such railroad, merely emphasizes the participation of each carrier in the production of a common source of danger, and hence points to their joint contribution to the expenses of its elimination."

In the opinion of this court in *Erie Railroad Co.* v. *Board of Public Utility Commissioners,* 89 *N. J. L.* 57 (affirmed on the opinion of the Supreme Court, 90 *Id.* 672), we find the following language (at *p.* 79).:

"The contention that the order is invalid, in that it requires the prosecutor to do the physical work of removing and changing the property of the Public Service Railway Company, is not well founded in fact. The order does not require the prosecutor to do that. It requires the Public Service Railway Company to change and remove such of its property and construction as is necessary to carry into effect the order, and further directs that both the prosecutor and the Public Service Railway Company keep specific and complete records of the expenses directly chargeable to the crossings, and each of them, so used by such street railway company.

"The order directs the Public Service Railway Company to pay ten per centum of the expenses of the changes required by the order directly chargeable to the crossings used by it.

This was the maximum amount allowed by the statute and, of course, the prosecutor cannot complain that it was so limited."

And again (at *p.* 85) :

"The contention that the legislature could not lawfully limit the proportion of expense to be borne by the street railway company to ten per cent. of the total expenses of the alteration of a crossing is, of course, unsound if the entire expense might at the legislative will have been placed upon the prosecutor. The opposite contention, viz., that the imposition of any part of the expense upon the trolley company was unlawful is, of course, not now under consideration."

In the opinion of the United States Supreme Court, in *Erie Railroad Co. et al.* v. *Board of Public Utility Commissioners,* 254 *U. S.* 394; 65 *L. Ed.* 322, it was said by Mr. Justice Holmes :

"While the Railroad Company contends that the Public Service Railway Company should be charged more, the latter company comes here upon the proposition that it should be charged nothing. We agree with the courts below that a street railway crossing the tracks of a steam railroad at grade in a public street increases the danger, and may be required to bear a part of the expense of removing it. The amount charged does not appear to be excessive, and upon the principles that we have laid down the payment of it may be made a condition of the continued right to use the streets."

We think that the language used by the courts on these occasions is indicative of the view that the combination of a railroad crossing a highway at grade and the use of that highway by a street railway operates to produce an unusually dangerous condition which the state has the power to eliminate at the joint expense of the railroad and railway companies. The wording seems to indicate that the elimination of the dangerous condition is a unit, an entirety, not the separate operations of the elimination of the grade crossing, at the joint expense of the railroad and railway companies, and then the removal of the street railway tracks at the expense of that company alone.

Furthermore, we think the words of the statute of 1913

require that construction. Section 2 mentions the "entire expense" of the elimination, and, in cases where a street railway exists, provides that 10% of "such expense" shall be borne by the street railway company and the balance by the railroad. By the simple meaning of the words and by the rules of grammatical construction, "such expense" refers back to "entire expense." And where a street railway is in existence, naturally the entire expense is increased by the cost of moving the tracks and facilities of such railway. As stated above, the failure to mention street railways in section 4 and the later amendment of that section to include them, when the 10% provision of section 2 was eliminated, is also of significance.

A further element to be considered is the inclusion in the Board's order of 1915 that both the Erie and the Public Service keep records of their expenses in these operations. We can see no logical reason for requiring the Public Service to keep a record of its expenses unless that record was to be used in arriving at the apportionment of the cost between the parties. If it was to bear the entire expense of moving its facilities, the cost of doing so was of concern to no one but itself.

The Erie Railroad Company contends, and it appears to be the fact, that in the adjustment of the costs of other projects the construction contended for by it and adopted by the Board was used without protest by Public Service and there prosecutor has acquiesced in that construction. Whatever may have happened in previous instances, we think the prosecutor is not precluded from raising the point at this time.

The Erie also complains of certain items of expense which have been included in the figures of the prosecutor, but we are determining the question submitted by the paragraph of the stipulation cited at the head of this opinion, and do not deem that the individual items are under review.

The order of the Board is reversed, with costs.